UNITED STATES, Appellee

v

ALBERT WILEY PORTER, JR., Lieutenant Commander,
U. S. Naval Reserve, Appellant

9 USCMA 656, 26 CMR 436

No. 11,270

Decided September 26, 1958

*Lieutenant (jg) Charles D. Hawley,* USNR, argued the cause for Appellant, Accused. With him on the brief was *Commander Charles Timblin,* USN.

*Lieutenant Colonel Charles H. Beale, Jr.,* USMC, argued the cause for Appellee, United States.

## Opinion of the Court

HOMER FERGUSON, Judge:

The accused was convicted of one specification of presenting for approval and payment a false claim against the United States and one specification of making and using a false paper for the purpose of obtaining payment of a claim against the United States, both in vio-

656

lation of Article 132, Uniform Code of Military Justice, 10 USC § 932, and of a charge of larceny in violation of Article 121, Uniform Code of Military Justice, 10 USC § 921.

Accused's trouble is related to a chain of marital circumstances. The record of trial, together with the record of the pretrial investigation, discloses his marriage to Marie Porter in July 1946, at Tijuana, Mexico. The accused and Marie entered into a separation agreement in 1952, and thereafter lived apart. The accused left Philadelphia, Pennsylvania, in the company of one Miss Marjorie Mancill (who testified at trial as Mrs. Marjorie M. Porter) and they traveled together from January 22, 1956, to March 15, 1956. On February 29, 1956, the accused and Miss Mancill visited a "marriage mill" in Juarez, Mexico, where the accused sought a divorce from Marie Porter and marriage to Miss Mancill. He executed certain papers and was advised that the firm's branch office in Tijuana would complete the transaction. On March 13, 1956, the accused and Miss Mancill went to the branch office in Tijuana. There they filled out and signed certain papers and were told that they were married. Although both parties were obviously surprised at the lack of ceremony, they indicated they believed themselves married as of March 13, 1956.

On April 3, 1956, the accused submitted a claim for reimbursement for travel for himself, his alleged wife Marjorie, and Lee Porter, a stepchild. He was paid by check on April 4, 1956. It was this claim which gave rise to the court-martial proceedings.

Subsequently, he received a letter from Mexico which indicated the divorce from Marie Porter on April 25, 1956, and marriage to Marjorie Mancill, the official marriage date being April 27, 1956. These were the dates of the final papers which were not received until May 1956. To allay doubts expressed by his new wife's mother, a marriage ceremony between the accused and Marjorie was performed in Yuma, Arizona, on July 16, 1956.

At trial, the Government proved through documentary evidence and the testimony of a witness that the claim was made and payment received by the accused. When, however, the prosecution called Mrs. Marie Porter as a witness, the defense objected to her competency to testify and asserted marital privilege. After an out-of-court hearing, the law officer ruled that Marie was the accused's wife but was competent to testify as an injured party. Marie proceeded to testify that she was married to the accused in July 1946, and was still married to him in April 1956, at the time of accused's submission of the travel claim, and that no children were born of the marriage.

A board of review determined that Marie was not competent to testify but ordered a rehearing, saying:

"As we have said previously, the proof of guilt presented in this case was dependent upon the testimony of the accused's spouse. We hold such testimony to have been inadmissible. We must, therefore, before determining whether the case may be remanded for a rehearing, decide whether there is reason to believe that other admissible evidence tending to prove the continuance of the marriage of the accused to Marie Porter exists. We consider that it does, by the way of documentary evidence coupled with the presumption of the continuance and validity of the marriage."

This Court granted review solely on the issue of whether the order of the board of review for a rehearing was legal under the circumstances.

Article 66 (d), Uniform Code of Military Justice, 10 USC § 866, provides pertinently:

"If the board of review sets aside the findings and sentence, it may, except where the setting aside is based on lack of sufficient evidence in the record to support the findings, order a rehearing."

Paragraph 92, Manual for Courts-Martial, United States, 1951, elaborates as follows:

"If the convening authority disapproves the findings of guilty and

the sentence of a court-martial he may, except where there is lack of sufficient evidence in the record to support the findings, order a rehearing, in which case he shall state the reasons for disapproval (Art. 63*a*). A rehearing may not be ordered in a case in which there is a lack of evidence in the record to support a finding of guilty of the offense charged or of an offense necessarily included in that charged; but if proof of guilt consisted of inadmissible evidence, for which there is available an admissible substitute, a rehearing may properly be ordered. For example, if proof of guilt of absence without leave was made on the basis of improperly authenticated documentary evidence, over the objection of the defense, the convening authority may disapprove the findings of guilty and the sentence and order a rehearing if he has reason to believe that properly authenticated documentary evidence will be available for use at the rehearing. On the other hand, if no proof of unauthorized absence was introduced at the trial, a rehearing may not be ordered. . . .

"Under like limitations a rehearing may be ordered by a board of review. . . ."

This Court has had several occasions to determine the correctness of ordering a rehearing. Such decisions have been marked by unanimity.

In United States v Eggers, 3 USCMA 191, 11 CMR 191, the Court considered the admissibility in evidence of handwriting exemplars which were taken from the accused involuntarily and before trial. We said in part:

". . . We note that the board of review ordered the charges dismissed because it was 'of the opinion that with this evidence [the handwriting specimens] excluded there is insufficient evidence to support the finding of guilty to any of the offenses charged.' This is not a proper application of the criterion for determining whether a rehearing should be ordered. The Manual, supra, paragraph 92, makes clear that the test is whether there exists an available

substitute for the evidence held inadmissible by the reviewing agency. Of course, if the evidence apart from that ruled inadmissible, is sufficient as a matter of law to sustain the conviction, there is no warrant for dismissal of the charges. In the present case there are almost certainly other examples of the accused's handwriting available."

This Court has also said that while we will not impose a waiver on an accused for failing to object to the introduction of a morning report, "we do not believe he should profit to the extent of winning a dismissal, if the evidence is held on appeal to have been improperly admitted and the record discloses an available substitute." United States v Phillips, 3 USCMA 557, 13 CMR 113.

In United States v Steele, 6 USCMA 707, 21 CMR 29, the accused was convicted of willful disobedience of a command of a superior officer and absence without leave. Certain morning report extracts were held inadmissible by the board of review because: (1) the Government failed to show that the person making the entry had the official duty to know or ascertain the truth of the matters recorded; and (2) the same officer authenticated the extract copies without any showing that he was the custodian of the original. The accused contended that a dismissal of the charges must be ordered because the record disclosed no available substitute for the evidence held inadmissible by the board of review. This Court said:

"Appellant's bid for a dismissal loses force when we pause to consider the many admissible substitutes available to the prosecution to show the unauthorized absence. . . . Properly authenticated official records to correct either or both of those [enumerated] deficiencies ought to be readily available in the event the case is retried or the Government may be able to prove the necessary element by persons familiar with accused's status during the period involved."

In United States v Chapman, 2 USCMA 138, 7 CMR 14, this Court considered a case in which a board of review ruled that evidence of two of the

three previous convictions considered by the Court had been improperly admitted. The board of review there ordered a rehearing and this Court, in discussing the applicable law, stated:

"It is also made abundantly clear in paragraph 92 of the Manual for Courts-Martial, United States, 1951, that a rehearing may be ordered where *any* reviewing agency rules as a matter of law that certain evidence. for which there is or may be an available substitute, was improperly admitted, and this action operates to produce evidential insufficiency. In this situation, the reversal is not predicated on a lack of sufficient evidence *in the record,* for the evidence is there, albeit, erroneously received. Any insufficiency without that evidence is, therefore, due not to an infirmity of the record, but rather to the action of the reviewing authority. Of course, there may conceivably be a case where—even accepting the evidence improperly admitted—the total evidential picture is insufficient to sustain the conviction. This would present a different problem."

Under the test, as clearly delineated above, this Court has no difficulty in holding that the board of review had authority to order a rehearing in the instant case. The question is one as to the availability of substitute evidence to show accused's marriage to Marie Porter. The board of review properly takes cognizance of what seems a reasonable probability that that documentary evidence of the marriage can be obtained. The board of review correctly referred to a presumption of the validity and continuance of the marriage.

The board of review had authority under the circumstances to order a rehearing and this Court finds no reason to disagree with its determination as to the availability of substitute evidence.

Chief Judge QUINN and Judge LATIMER concur.